OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-Appellant, Darron Rampey, appeals the decision of the Stark County Court of Common Pleas that found him guilty of two counts of possession of cocaine. Rampey raises three issues on appeal.
 {¶ 2} First, Rampey contends that the State illegally searched his vehicle and, therefore, that the cocaine seized in that search should have been suppressed. Rampey's argument is meritless. The search of his vehicle was incident to a lawful arrest, so the police did not need a warrant before searching Rampey's truck. Furthermore, even if the search was conducted prior to the arrest, the cocaine was properly seized since it was in plain view during a legal Terry stop. Rampey's arguments to the contrary are meritless.
 {¶ 3} Second, Rampey claims that the trial court improperly allowed a tape recording of a phone conversation allegedly between he and a confidential informant into evidence since it was not authenticated. However, the evidence in the record clearly shows that the tape in question was a recording of the conversation between the confidential informant and a third party and the confidential informant stated that he knew Rampey was the third party because he recognized his voice. Thus this argument is also meritless.
 {¶ 4} Finally, Rampey argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. However, the evidence in the record supports the jury's conclusion that Rampey constructively possessed the cocaine found in his vehicle. For these reasons, the trial court's decision is affirmed.
 Facts {¶ 5} On March 28, 2003, Darnell Holmes, a confidential informant, told the police that he had set up a cocaine purchase from Rampey later that day at a VFW in Canton, Ohio. Holmes made a monitored phone call to Rampey to say that he was ready to meet. He gave the police Rampey's name, described his vehicle, gave the vehicle's license plate number, told them the amount of cocaine being sold, where the cocaine would be in Rampey's truck, and how that cocaine would be packaged.
 {¶ 6} About fifteen minutes after the phone call, police officers saw Rampey approach the VFW in a vehicle matching Holmes's description. They arrested Rampey after he exited the vehicle. An officer then climbed into Rampey's truck and found packages of crack cocaine where Holmes said they would be, wrapped in the manner he described.
 {¶ 7} Rampey was subsequently indicted on two counts of drug possession. On June 17, 2003, Rampey moved to suppress the cocaine found in his vehicle, arguing that both his warrantless search and the warrantless search of his vehicle were illegal. After a hearing, the trial court denied that motion on June 22, 2003.
 {¶ 8} The matter then proceeded to a jury trial. During the course of that trial, the State played a tape of Holmes's phone conversation with Rampey over Rampey's objection. At the conclusion of the trial, the jury found Rampey guilty of both counts and the trial court sentenced him accordingly.
 Suppression of Evidence {¶ 9} In his first assignment of error, Rampey argues:
 {¶ 10} "The trial court abused its discretion by failing to suppress evidence seized in violation of the Ohio and United States Constitutions."
 {¶ 11} Rampey argues the trial court erred by not granting his motion to suppress for three reasons: 1) his arrest was unlawful since there was no probable cause to arrest him; 2) the search was unlawful since it was not a search incident to his arrest; and, 3) the police did not properly impound his vehicle, so the search could not have been the result of a proper inventory of the vehicle prior to impoundment.
 {¶ 12} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Long
(1998), 127 Ohio App.3d 328, 332. At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact since it is in the best position to resolve those issues. State v. Mills (1992), 62 Ohio St.3d 357,366. We are bound to accept the trial court's factual determinations made during the suppression hearing so long as they are supported by competent, credible evidence. State v.Harris (1994), 98 Ohio App.3d 543, 546. Accepting these factual findings as true, an appellate court must then independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court erred in applying the substantive law to the facts of the case. Id.
 {¶ 13} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." A warrantless search or seizure is per se unreasonable under these constitutional provisions, subject to a few specific and well-delineated exceptions.California v. Acevedo (1991), 500 U.S. 565; State v. Kessler
(1978), 53 Ohio St.2d 204, 207. The prosecution has the burden of establishing the application of one of the exceptions to this rule designating warrantless searches as per se unreasonable. Id. Any evidence obtained in violation of the accused'sFourth Amendment rights must be excluded. Mapp v. Ohio (1961),367 U.S. 643, 655. The purpose of this exclusionary rule is to remove any incentive to violate the Fourth Amendment and, thereby, deter police from unlawful conduct. United States. v. Leon (1984),468 U.S. 897; State v. Jones, 88 Ohio St.3d 430, 435, 2000-Ohio-0374.
 {¶ 14} Rampey first challenges the search by arguing that his arrest was unlawful, but this argument is meritless. Rampey was clearly arrested at the scene. The arresting officer stated that he did not believe he was arresting Rampey, but his subjective belief is not controlling. The constitutional test for determining when a seizure, of which an arrest is one type, has occurred is expressed in objective rather than subjective terms.Florida v. Royer (1983), 460 U.S. 491. A seizure becomes an arrest rather than a Terry detention if a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. United States v.Colrral-Franco (C.A.5, 1988), 848 F.2d 536.
 {¶ 15} In this case, Rampey was handcuffed, placed into the rear of a police cruiser, and taken to the police station. There is no indication in the record that he was thereafter ever free to leave. Under the circumstances herein, any reasonable person in defendant's position would have understood the situation to constitute a restraint on his freedom of movement of the degree associated with a formal arrest.
 {¶ 16} The United States Supreme Court has long held that officers may rely on information provided by confidential informants to make warrantless arrests as long as that information is corroborated by other sources. See Illinois v.Gates (1983), 462 U.S. 213, 242; Jones v. United States
(1960), 362 U.S. 257, 269; Draper v. United States (1959),358 U.S. 307. For example, in Draper a reliable informant reported that a man would arrive in Denver on a train from Chicago on one of two days, and that he would be carrying a quantity of heroin. The informant also supplied a fairly detailed physical description of the man, and predicted that he would be wearing a light colored raincoat, brown slacks, and black shoes, and would be walking "real fast." Id. at 309. The informant gave no indication of the basis for his information.
 {¶ 17} On one of the stated dates police officers observed a man matching this description exit a train arriving from Chicago; his attire and luggage matched the informant's report and he was walking rapidly. Police officers arrested the man, searched him, and found the two envelopes containing heroin clutched in his left hand in his raincoat pocket and a the syringe in his bag.
 {¶ 18} The United States Supreme Court found that the arrest and search incident to that arrest were lawful. The informant had described the man in detail and the officers "had personally verified every facet of the information given him by [the informant] except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of [the informant]'s information being thus personally verified, [the police officer] had `reasonable grounds' to believe that the remaining unverified bit of [the informant]'s information — that [the defendant] would have the heroin with him — was likewise true." Id. at 313.
 {¶ 19} This case is not very different from the situation inDraper. Detective Charles Lancaster, a member of the Stark County Violent Crimes Task Force, testified that he regarded Holmes as "very reliable." Holmes had been "instrumental in taking down large drug dealers within the City of Canton" and had helped the police locate fugitives. Holmes called Rampey at the behest of Detective Lancaster and set up a drug buy with Rampey. After the phone call, Holmes told Detective Lancaster that the meeting would be at a VFW located at 1836 Eighth in Canton, Ohio. Rampey would be driving a clean blue Dodge Ram pick-up truck and the drugs would be in the center console of that truck, wrapped in paper towel or tissue. Other police officers were alerted to the bust, were given a description of the location and truck, and were distributed pictures of Rampey.
 {¶ 20} Rampey arrived at the location about 20 minutes after the phone call, driving a clean blue Dodge Ram pickup truck. This verified the information the police received from Holmes. Thus, the police officers on the scene had reasonable grounds to believe the remaining unverified bit of the Holmes's information, that Rampey had cocaine with him with intent to sell that cocaine, and that Rampey's arrest was lawful. Rampey's arguments to the contrary are meritless.
 {¶ 21} Rampey next argues that the search was not a proper search incident to arrest. One of the exceptions to the general prohibition against warrantless searches is a search incident to a lawful arrest. See Chimel v. California (1969), 395 U.S. 752, 7627-63. A valid search incident to a lawful arrest is limited to a search of the arrestee's person and the area within her immediate control for weapons or evidence which may be concealed or destroyed. Id. The purpose of such a search is twofold: to protect the arresting police officers and to prevent the concealment or destruction of evidence. Id. "`The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.'"New York v. Belton (1981), 453 U.S. 454, 461, quoting UnitedStates v. Robinson (1973), 414 U.S. 218, 235.
 {¶ 22} Both the Ohio and United States Supreme Courts have held that a policeman who makes a lawful custodial arrest of the occupant of an automobile may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. See New York v. Belton (1981), 453 U.S. 454, 460; State v.Murrell, 94 Ohio St.3d 489, 2002-Ohio-1483, syllabus. Belton
and Murrell establish "a bright-line rule that extended the principles of Chimel to arrest situations involving motor vehicles" so police will have a set rule establishing whether they can search an automobile incident to an arrest. Murrell at 491, 496. After Murrell, Ohio's appellate courts have consistently validated searches of the passenger compartment of an automobile incident to the arrest of that vehicle's driver. See State v. Schultz, 11th Dist. No. 2003-L-156, 2005-Ohio-0345; State v. Biehl, 9th Dist. No. 22054,2004-Ohio-6532; State v. Crenshaw, 6th Dist. No. L0-2-1337, 2003-Ohio-4860; State v. Pope, 8th Dist. No. 81321, 2003-Ohio-3647; State v. Jamison, 2nd Dist. No. 19357, 2003-Ohio-0907; State v. Wilson, 9th Dist. No. 02CA0013-M, 2003-Ohio-0540. In many of these cases, the appellate court affirmed the constitutionality of the search on these grounds even though it may have been an improper inventory pursuant to an impoundment. See Schultz; Crenshaw; State v. Kelly, 2nd Dist. No. 19150, 2002-Ohio-5130; State v. Earley, 2nd Dist. No. 19161, 2002-Ohio-4112; State v. Locklin, 2nd Dist. No. 19134, 2002-Ohio-2931; State v. Mayle, 9th Dist. No. 01CA0068, 2002-Ohio-2652; State v. Bozeman, 2nd Dist. No. 19155, 2002-Ohio-2588; State v. Clancy, 2nd Dist. No. 18844, 2002-Ohio-1881. Thus, the trial court could have properly concluded that the police conducted a legal search incident to arrest when they discovered the crack cocaine in the vehicle.
 {¶ 23} Of course, we would reach this conclusion even if we did not determine that Rampey had been arrested. Based on the evidence in the record, the trial court could have concluded that the crack cocaine was in plain view. It is well-established that police may seize evidence found in plain view despite the failure to obtain a warrant for that seizure. Coolidge v. New Hampshire
(1971), 403 U.S. 443, 465-466. In order for evidence to be validly seized under the plain view exception, the police officer must have legally been in a position to view the object in question, the incriminating character of the evidence must be immediately apparent, and the officer must have a lawful right of access to the evidence. Horton v. California (1990),496 U.S. 128, 136-137. Notably, the police officer only needs probable cause to associate the property with criminal activity before evidence may be seized under the plain-view doctrine; he need not know that the items in plain view are contraband or evidence of a crime. Arizona v. Hicks (1987), 480 U.S. 321, 326.
 {¶ 24} In this case, the officers had a lawful right to be in a position to view the evidence since they had probable cause to arrest Rampey, for the reasons discussed above; the cocaine was wrapped in a manner typical in the illegal drug industry, so the incriminating character of the evidence was immediately apparent to the officer at the scene; and the packages of cocaine were plainly visible in the ashtray of the truck Rampey was exiting when approached by the police, so the officer had a lawful right of access to the evidence. The trial court did not err when it denied Rampey's motion to suppress. Rampey's first assignment of error is meritless.
 Admissibility of Tape Recorded Statement {¶ 25} In his third assignment of error, Rampey argues:
 {¶ 26} "The trial court abused its discretion in admitting a tape recorded statement of a telephone conversation without requiring a proper foundation for voice identification."
 {¶ 27} Rampey argues that the trial court erred by allowing the prosecutor to play a tape of the conversation between Holmes and Rampey arranging the drug buy since the tape was not properly authenticated. Rampey's argument is meritless.
 {¶ 28} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. In order to find an abuse of that discretion, this court must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 29} Before a document can be admitted into evidence, it must satisfy the requirements of authentication. State v. Smith
(1989), 63 Ohio App.3d 71, 74. An exhibit is authenticated "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). For instance, a voice can be identified as belonging to a particular speaker "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Evid.R. 901(B)(5).
 {¶ 30} In this case, the prosecutor played a tape of the conversation between Holmes and Rampey during Detective Lancaster's testimony. Detective Lancaster stated that the tape recording was the recording of the conversation which took place that day, but admitted that he had never heard Rampey's voice before that day. However, Holmes later testified that he had known Rampey for eight years, had spoken to him on the phone before, and recognized Rampey's voice. He testified that the man he spoke to on the phone that day was Rampey. The testimony of both Holmes and Detective Lancaster is sufficient to support a finding that the tape was of a conversation between Rampey and Holmes. Accordingly, the trial court did not abuse its discretion by allowing this tape into evidence and Rampey's argument to the contrary is meritless.
 Sufficiency and Weight of the Evidence {¶ 31} In his second assignment of error, Rampey argues:
 {¶ 32} "Appellant's conviction is against the manifest weight and sufficiency of the evidence."
 {¶ 33} Within this assignment of error, Rampey does not argue that he did not possess the cocaine. Instead, he challenges both the weight and sufficiency of the evidence proving that he knowingly possessed the cocaine. As the Ohio Supreme Court has stated, arguments concerning the "sufficiency of the evidence" should not be confused with those addressing the "manifest weight of the evidence." See State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-0052, at paragraph two of the syllabus ("The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."). "Sufficiency of the evidence" is "`a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" Id. at 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." Id. at 273. Whether the evidence is legally sufficient is a question of law. Thompkins at 386.
 {¶ 34} In contrast, when reviewing whether a conviction was against the manifest weight of the evidence, we must "examine whether the evidence produced at trial `attains the high degree of probative force and certainty required of a criminal conviction.'" State v. Tibbetts, 92 Ohio St.3d 146, 163, 2001-Ohio-0132 quoting State v. Getsy, 84 Ohio St.3d 180, 193, 1998-Ohio-0533. In order to do this, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "`Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis sic.)Thompkins at 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 35} Rampey was convicted of violating R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Cocaine is a controlled substance under the Ohio Revised Code. R.C. 3719.41, Schedule II(A)(4).
 {¶ 36} The Revised Code states that a person acts "knowingly" "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "[W]hether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." State v.Huff (2001), 145 Ohio App.3d 555, 563. Thus, the test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." State v. Elliott (1995),104 Ohio App.3d 812, 821.
 {¶ 37} The Revised Code defines "possess" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). A person can either constructively or actually possess a thing. State v. Hankerson (1982),70 Ohio St.2d 87, syllabus. A person constructively owns a thing then they exercise dominion and control over an object, even though that object may not be within his immediate physical possession. Id. For example, the fact that the defendant was located in very close proximity to readily usable drugs may show constructive possession. State v. Barr (1993), 86 Ohio App.3d 227, 235. Likewise, a jury can properly conclude that a defendant who exercises dominion and control over an automobile also exercises dominion and control over illegal drugs found in the automobile.State v. Smith, 162 Ohio App.3d 208, 2005-Ohio-3579, at ¶23-28; State v. Trembly (2000), 137 Ohio App.3d 134, 141.
 {¶ 38} In this case, the evidence in the record clearly establishes that there were two bags of cocaine in Rampey's truck and he does not argue with these facts. Instead, he contends that the State failed to prove that he knowingly possessed that cocaine. His argument is meritless.
 {¶ 39} The first person to testify was Detective Lancaster, a former member of the Stark County Violent Crimes Task Force, which investigates certain violent crimes and conducts long-term drug investigations in Stark County, Ohio. As a member of that task force, Detective Lancaster would occasionally work undercover to purchase drugs, but at other times he would use confidential informants to get within a criminal organization. Confidential informants are generally people with criminal records with whom people within a criminal organization would be comfortable. Holmes is a confidential informant who Detective Lancaster worked with in his capacity as a member of the task force.
 {¶ 40} When Detective Lancaster first began working with Holmes, Holmes was on parole for attempted murder and charges were pending against him for violating his parole. Detective Lancaster promised Holmes that if he could help set up three drug buys, then the parole officer would testify favorably on his behalf at the parole violation hearing. Subsequently, Detective Lancaster worked with Holmes for seven to eight months and found the information he provided to be very accurate.
 {¶ 41} In early 2003, Holmes told Detective Lancaster that he had set up a possible drug buy with Rampey. Holmes told Detective Lancaster that Rampey intended to sell Holmes one ounce of cocaine at a VFW on Eighth Street in Canton and that Rampey would be driving a fairly new light blue Dodge Ram pickup truck. He even provided the truck's license plate number to Detective Lancaster. Holmes told Detective Lancaster that the drugs would be in the center console of the truck, wrapped in white tissue paper. Detective Lancaster brought Holmes into the office and had Holmes place a phone call to Rampey's cell phone and that conversation was tape-recorded. After the call, other agents were briefed and set up surveillance around the VFW. About fifteen minutes after the phone call, the other agents reported to Detective Lancaster that Rampey was apprehended with the drugs.
 {¶ 42} The State next called Holmes to testify. He confirmed that he was on parole for attempted murder, faced a further prison sentence for a parole violation, and agreed to work as a confidential informant to avoid the further prison sentence. He further testified that he formerly dealt and abused drugs in Canton, Ohio. Holmes knew that he had to help produce arrests as part of his deal with the police. So, while Holmes was working with the police, he told them that Rampey was a drug dealer, that he drove a blue Dodge Ram truck, the license plate number for the truck, and where Rampey kept those drugs in the truck, and how those drugs would be packaged. According to Holmes, he had known Rampey for about eight years before 2003, had been to Rampey's home, had purchased drugs from him about ten previous times, and had spoken to him on the phone before.
 {¶ 43} On March 28, 2003, Holmes called Rampey at the behest of the police. Before the phone call, he had already set up a drug buy with Rampey at the VFW. The purpose of the phone call was to tell Rampey when to be there for the buy. When Holmes made the phone call, he knew he was speaking to Rampey because he recognized his voice. He further confirmed that the tape played for the jury was the tape of his phone conversation with Rampey.
 {¶ 44} Finally, Holmes testified that he was not in Rampey's truck the night before and that he had never placed drugs in Rampey's truck.
 {¶ 45} The State next had Holmes's parole officer, Michael Beebe, testify next. He also worked with the task force and knew Holmes began cooperating with it in 2002. He said that he spoke with the judge in charge of sentencing Holmes for his parole violation and arranged for Holmes to be a confidential informant for the task force. As part of that deal, Holmes had to complete three assignments. He later gave the judge a favorable recommendation regarding Holmes's cooperation with the task force and Holmes was given two years of probation.
 {¶ 46} Sergeant Victor George of the Canton Police Department testified after Beebe. He worked in the Canton vice unit and was assisting with the investigation on March 28, 2003. He was informed of the proposed drug buy that day and was briefed on the target, the vehicle he would be driving, the license plate number of the vehicle, the amount of drugs, how those drugs were packaged, and the location of the buy. Sergeant George and his partner then set up surveillance near the VFW and were the first police unit to see Rampey arrive at the VFW. By the time Sergeant George and his partner arrived at the scene, Rampey had already been stopped by other officers in the VFW's parking lot, so Sergeant George got in the vehicle to drive it back to police headquarters. When he got into the vehicle, he noticed knotted white napkins in the ashtray, which was how he understood the drugs were going to be packaged. Sergeant George testified that this was a typical way to package crack cocaine. When he inspected those napkins, he confirmed that they contained crack cocaine.
 {¶ 47} Officer James Monigold testified next. He was also assisting the task force's investigation on March 28, 2003, and heard the phone call between Holmes and Rampey. He testified about the chain of custody of the tape and drugs and confirmed that the voice he heard on the phone call was that of Rampey.
 {¶ 48} The final witness for the State was Brad Taylor of the Canton-Stark County Crime Lab. He analyzed the substances seized from Rampey's truck and confirmed that they were rocks of crack cocaine.
 {¶ 49} Rampey called two witnesses in his defense. The first, Christine Jones, testified that she had known Rampey for about ten years and they were good friends. She said that she, Rampey, and the rest of their friends would usually meet at the VFW in Canton every Friday between five and six o'clock and that March 28, 2003, was a Friday. She also testified that she had seen Holmes riding with Rampey in Rampey's truck the day before Rampey's arrest.
 {¶ 50} Rampey's second witness, Keith Greggs, was also a good friend of Rampey's. He said that Rampey was at the VFW every Friday between five and six o'clock to meet he and other friends. He also testified that he saw Holmes in Rampey's truck with Rampey the day before Rampey's arrest.
 {¶ 51} This evidence is clearly sufficient to prove that Rampey knowingly possessed the cocaine. Viewing the evidence in the light most favorable to the State, Rampey had previously sold cocaine to Holmes at the VFW, he had arranged to sell more drugs to Holmes that night, cocaine was found in plain sight in his truck after he was arrested getting out of his truck, and the cocaine was packaged in a manner typical in the illegal drug industry.
 {¶ 52} Furthermore, the jury's conclusion is not against the manifest weight of the evidence. While there is no physical evidence, such as fingerprints, tying Rampey to the drugs seized from his vehicle, Rampey was getting out of his vehicle where drugs were sitting in his ashtray, wrapped in a manner typical in the illegal drug industry, after Rampey and Holmes had agreed to meet so Rampey could sell Holmes some cocaine.
 {¶ 53} Rampey's trial attorney tried to argue that Holmes planted the drugs there the night before. According to that argument, Holmes was extremely motivated to provide the police with names of dealers to bust so he could avoid another prison sentence. Rampey's witnesses testified that Holmes was in Rampey's truck the night before Rampey's arrest and that Holmes knew that Rampey would normally be at the VFW on Friday evenings. So Rampey's attorney theorized that Holmes planted the drugs and then faked a phone call to "Rampey" so he could turn in another person to the police.
 {¶ 54} There are distinct problems with this theory. First, the only people testifying that they saw Holmes in Rampey's truck were Rampey's good friends and they all testified that they only saw Holmes in Rampey's truck when Rampey was also in the truck. This would not have given Holmes much time to "set up" Rampey . Furthermore, the drugs were in plain sight in Rampey's ashtray, so if Holmes did "set up" Rampey, then he did not place the drugs in a safe place where Rampey was unlikely to discover them. Finally, the evidence in support of this theory is more tenuous than the evidence in support of the State's theory that Rampey knew the drugs were in the vehicle. This theory does not show that Rampey's conviction is against the manifest weight of the evidence.
 {¶ 55} The jury's verdict is supported by the evidence in the record. Rampey's second assignment of error is meritless.
 Conclusion {¶ 56} Rampey argues that the trial court erred by not suppressing the cocaine found in his truck, but that cocaine was in plain sight and was found incident to a lawful arrest, so his arguments are meritless. Rampey next argues that the trial court erred by admitting a recording of a phone conversation into evidence, but the recording was properly authenticated since Holmes testified that he recognized Rampey's voice and more than one witness said it was a recording of a conversation between Holmes and Rampey. Finally, the evidence supports the jury's verdict. Rampey constructively possessed the drugs in his vehicle. Accordingly, the judgment of the trial court is affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.