DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Turan Johnson, appeals the October 16, 2006 judgment of the Lucas County Court of Common Pleas which, following a jury trial convicting him of kidnapping and rape, sentenced appellant to ten years in prison and classified appellant as a sexual predator. For the reasons that follow, we affirm the trial court's judgment. *Page 2 
 {¶ 2} A recitation of the relevant facts is as follows. On February 28, 2006, appellant was indicted on two counts of rape, in violation of R.C. 2907.02(A)(2) and (B), and one count of kidnapping, in violation of R.C. 2905.01(A)(4). The charges stem from an incident in the early morning of September 9, 2005; the victim alleged that she was taken, at knifepoint, to an alley and that appellant forced his finger and then his penis into the victim's vagina. The victim suffered multiple small lacerations that required sutures and she was struck across the mouth, loosening two teeth. Appellant entered a not guilty plea to the charges.
 {¶ 3} On August 22, 2006, the matter proceeded to a jury trial. The state presented testimony of investigating officers, the sexual assault nurse that treated appellant, the forensic scientist who conducted DNA testing on samples taken from the rape kit and buccal swabs taken from appellant, two individuals who witnessed the victim's demeanor immediately following the incident, and the victim. Appellant presented the testimony of his brother, Christopher Johnson, and appellant testified on his behalf.
 {¶ 4} A summary of the testimony presented by the state is as follows. The victim testified that at approximately 3:00 a.m., on September 9, 2005, she left her home to go to the 7-11 store on Lagrange Avenue to get diapers and menstruation pads. The victim testified that she was walking down the middle of Streicher Street in Toledo, Lucas County, Ohio, when she was approached from behind by a man with a knife. According to the victim, the man kept the knife under her sweatshirt and forced her to *Page 3 
walk approximately one and one-half miles to an alley behind Caroline Street, also in Lucas County, where he raped her. The victim testified that during the struggle she received small lacerations and was hit in the mouth. Following the attack, the victim ran into the street in an attempt to get help; two men from a nearby home heard her screaming and assisted her. According to the men, who testified at trial, they chased the assailant but he got away. The victim testified that she did not know her attacker.
 {¶ 5} Several Toledo police officers testified regarding the investigation. Toledo Police detective Regina Lester testified that on February 20, 2006, she interviewed appellant and that he denied having sex with anyone at the Caroline Street location. Appellant stated that he would not walk that far to have sex with anyone.
 {¶ 6} The sexual assault nurse testified that the victim was very upset, hysterical and crying. Bureau of Criminal Investigations serologist, Linsey Hail, testified that she examined the rape kit and the panties that were submitted in the case. Hail stated that she conducted a DNA analysis of the vaginal swabs from the rape kit which contained seminal fluid and the buccal swabs taken from appellant. Hail stated that the analysis showed the victim's DNA as a major contributor and appellant's DNA as a minor contributor. No other DNA was found.
 {¶ 7} Appellant's brother, Christopher Johnson, testified that he had seen the victim with appellant on at least three occasions during the summer of 2005. Johnson admitted that he had an aggravated drug trafficking conviction. *Page 4 
 {¶ 8} According to appellant, he had previously paid the victim for sex. Appellant testified that on the night in question, the victim asked appellant if he had any money and if he wanted to "do something." Appellant agreed and they began walking; appellant stated that he just followed the victim and that he did not know where they were going. The victim led him to an alley; she took off her pants and they began to have intercourse. Appellant stated that when they were finished he noticed blood on his white t-shirt. Appellant testified that he refused to pay the victim and that she then brandished a knife. Appellant stated that he then hit her in the mouth. Following jury deliberations appellant was found guilty of the counts in the indictment and this appeal followed.
 {¶ 9} Appellant now raises the following five assignments of error for our review:
 {¶ 10} "Assignment of Error No 1:
 {¶ 11} "The trial court erred when it failed to admit into evidence an audiotape of prior inconsistent statements made by the victim.
 {¶ 12} "Assignment of Error No. 2:
 {¶ 13} "The defendant was denied his right to effective assistance of counsel [with regard to the admission of the audiotape.] *Page 5 
 {¶ 14} "Assignment of Error No. 3:
 {¶ 15} "The trial court abused its discretion when it failed to dismiss a juror after the juror revealed that he could not be fair and impartial.
 {¶ 16} "Assignment of Error No. 4:
 {¶ 17} "The defendant was denied his right to effective assistance of counsel [with regard to counsel's failure to challenge a potential juror for cause.]
 {¶ 18} "Assignment of Error No 5:
 {¶ 19} "The cumulative effect of the errors delineated above deprived Mr. Johnson of his constitutional right to a fair trial."
 {¶ 20} In appellant's first assignment of error, he contends that the trial court erred when it ruled that an audiotape, purportedly of the victim making a prior inconsistent statement (Evid.R. 613) was inadmissible under Evid.R. 608. The audiotape in question, an alleged recording of a telephone call to a local radio station, was proffered during the cross-examination of the victim. The substance of the recording was that a woman claimed to have "lied on a man named Turan" who was currently in jail. The victim denied calling the radio station; defense counsel requested to play the recording to refresh the victim's memory. Following the state's objection, the parties approached the bench and the court determined that because the tape could not be authenticated it would not be played during the trial. *Page 6 
 {¶ 21} On the record, defense counsel again proffered the tape. Counsel stated:
 {¶ 22} "[W]e were attempting to play the phone conversation wherein it indicates a person calls the radio station that I made reference to 107.3 and says that it's from the day after September 10 where it was recorded by Mr. Johnson's son while he was recording things off the radio. Mr. Johnson has heard the tape — got the tape, has had prior contact with [the victim] and has indicated to me that it's her voice. * * *. When the police officers say I can recognize a voice I don't see why Mr. Johnson can't say the same thing. It's for impeachment purposes. * * *. It's subsequent [inconsistent statements * * *."
 {¶ 23} Conversely, the state contended that under Evid.R. 608, specific instances of conduct, extrinsic evidence used for impeachment purposes was impermissible. The state also noted that absent testimony from radio station personnel, there was no way to authenticate the audiotape. Further, the state noted that the alleged date of the recording was September 12, 2005; appellant was not identified as a suspect and arrested until February 2006.
 {¶ 24} The trial court determined that, under Evid.R. 608(B), specific instances of conduct, used to support or attach the witnesses character for truthfulness, may not be proven by extrinsic evidence.
 {¶ 25} At the outset we note that it is well-settled that "`[t]he scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge.'" State v. Lundgren, *Page 7 73 Ohio St.3d 474, 487, 1995-Ohio-227, quoting O'Brien v. Angley (1980),63 Ohio St.2d 159, 163. Thus, when the trial court admits or excludes certain evidence from trial, the order or ruling of the court will not be reversed absent a clear and prejudicial abuse of discretion. O'Brien at 163.
 {¶ 26} The application of Evid.R. 608 and 613 are at issue in this assignment of error. Evid.R. 608(B) provides:
 {¶ 27} "B) Specific instances of conduct
 {¶ 28} "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."
 {¶ 29} Evid.R. 613(B) provides:
 {¶ 30} "B) Extrinsic evidence of prior inconsistent statement of witness
 {¶ 31} "Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
 {¶ 32} "(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and *Page 8 
the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
 {¶ 33} "(2) The subject matter of the statement is one of the following:
 {¶ 34} "(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
 {¶ 35} "(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(B) or 706;
 {¶ 36} "(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence."
 {¶ 37} Appellant contends that the audiotape should have been admitted under Evid.R. 613(B), to show a prior admission by the victim that the rape allegation was unfounded. Appellant further contends that, as an individual familiar with the victim's voice, he could have authenticated the tape.
 {¶ 38} Conversely, the state asserts that the audiotape contains no "fact that is of consequence to the determination of the action;" therefore, because the recording is relevant only to the credibility of the victim it is inadmissible. The state further argues that the audiotape could not be properly authenticated by appellant.
 {¶ 39} As set forth above, the trial court determined that the audiotape was inadmissible under Evid.R. 608(B), as extrinsic evidence of the victim's character for truthfulness. The essence of the recording was that a woman stated that she "lied on a man named Turan" because he hurt her and that he was "downtown" in jail. The *Page 9 
recording is anonymous and the caller does not specify how she had been hurt. Upon review we cannot say that the trial court abused its discretion when it excluded the audiotape under Evid.R. 608(B). Moreover, the trial court also noted the audiotape was not properly authenticated as required under Evid.R. 901(A).[1]
 {¶ 40} Appellant contends that because he is familiar with the victim's voice, he could have authenticated the audiotape. In support, appellant cites State v. Rampey, 5th Dist. No. 2004 CA 00102,2006-Ohio-1383, which held that the testimony of a confidential informant and detective were sufficient to authenticate a tape recorded statement. In Rampey, the confidential informant testified that he had known the defendant for eight years, had spoken to him on the telephone before, and recognized his voice. Id. at ¶ 30. Further, the detective testified that the recording was a recording of a conversation that was taped on the day of the alleged drug transaction. Id. The court then determined that the testimony of both the confidential informant and the detective was sufficient to support a finding that the tape was of a conversation between the defendant and the confidential informant. Id.
 {¶ 41} In the instant case, unlike the detective's testimony inRampey, we have no testimony from radio station personnel to establish that the conversation was, in fact, a recording from the radio station. Further, unlike the eight years of contact between the *Page 10 Rampey confidential informant and the defendant, appellant testified that he met the victim on two prior occasions and "consulted with her on two other occasions." On at least one of these occasions, appellant merely saw the victim; he did not speak with her. On the two occasions when he met with the victim, they had contact for one hour or less. The victim denied ever meeting appellant prior to the incident. Based on the foregoing, we find that the trial court did not abuse its discretion when it determined that the audiotape had not been properly authenticated and denied its admission at trial. Appellant's first assignment of error is not well-taken.
 {¶ 42} Appellant's second assignment of error contends that his trial counsel was ineffective by failing to properly authenticate the audiotape. To prove ineffective assistance of counsel an appellant must show: (1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed appellant under the Sixth Amendment, and (2) that the deficient performance prejudiced appellant's defense. Strickland v. Washington (1984),466 U.S. 668, 686-687, 104 S.Ct. 2052, 80 L.Ed.2d 674. In essence, appellant must show that the proceedings, due to his attorney's ineffectiveness, was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id. at 693.
 {¶ 43} Additionally, in considering a claim of ineffective assistance of counsel, a court must be "highly deferential" to trial counsel and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. A properly licensed attorney in Ohio is presumed to execute his duties in an *Page 11 
ethical and competent manner. State v. Hamblin (1988),37 Ohio St.3d 153, 155-56, sentence reversed on other grounds, Hamblin v.Mitchell (C.A.6, 2003), 354 F.2d 482.
 {¶ 44} Upon review, we find that appellant's trial counsel was not ineffective by failing to subpoena radio personnel for trial. Even if the audiotape in question had been authenticated as a radio station recording, the question remained as to whether the voice was, in fact, the victim's. Appellant claimed to be able to identify the victim's voice though he had only spoken to her between one and two hours at most and there was no evidence to show that appellant had ever spoken to her on the telephone.
 {¶ 45} In addition, under Evid.R. 403, relevant testimony may still be excluded "if its probative value is outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." As stated by appellant's trial counsel, the audiotape in question was recorded on either September 10 or September 12, 2005, just days after the incident. At that time, the victim stated that she did not know the identity of the suspect. Further, the female on the audiotape stated that the "Turan" she "lied on" was currently in jail. Appellant was not identified or jailed until February 2006. Based on these facts, we find that the probative value of the audiotape was minimal and the risk of confusing the jury outweighed any benefit of its admission.
 {¶ 46} Accordingly, we find that trial counsel was not constitutionally ineffective. Appellant's second assignment of error is not well-taken. *Page 12 
 {¶ 47} In appellant's third assignment of error he contends that the trial court erred by failing to sua sponte remove a potential juror for cause. At issue is the following exchange:
"THE COURT: * * *. Anybody or family members or any close associate or relative ever been a victim of something like this before? And you are Mr. [C.]?
 {¶ 48} "MR. [C.]: Yes.
 {¶ 49} "THE COURT: You don't have to go into great detail. You have some family member that may have been a victim?
 {¶ 50} "MR. [C.]: My cousin.
 {¶ 51} "THE COURT: As a result of that do you think you could still sit as a fair and impartial juror in this case?
 {¶ 52} "MR. [C.]: Probably not."
 {¶ 53} It has been held in Ohio that "a trial court may, in the exercise of its discretion, sua sponte dismiss a juror when it determines that a juror possesses either enmity or bias toward a party or determines that for some other reason a juror is not impartial or is otherwise unsuitable for service." State v. Midwest Pride IV, Inc.
(1998), 131 Ohio App.3d 1, 20. The court determined that "a trial court's authority to sua sponte dismiss a juror when it determines that a juror is not impartial or otherwise unsuitable for service" is "implicit in Crim.R. 24." Id. at 19. The court reasoned that since, pursuant to the rule, a trial court is permitted to conduct the voir dire examination of prospective *Page 13 
jurors itself; the court is also vested with the authority to dismiss a prospective juror sua sponte. Id.
 {¶ 54} The Midwest Pride court further states that a trial court's decision to retain or dismiss a juror and that a trial court's ruling on appeal "`will not be disturbed on appeal unless it is manifestly arbitrary.'" Id., quoting State v. Tyler (1990), 50 Ohio St.3d 24, 31.
 {¶ 55} Upon review, we cannot say that the trial court abused its discretion when it failed to sua sponte dismiss the potential juror. When addressed as a group, Mr. C. responded negatively to having any concern that he could not be a fair and impartial juror. Mr. C. was thoroughly questioned by the state and appellant's trial counsel. During trial counsel's examination, the following exchange took place:
 {¶ 56} "MR. EVANS: The jury, sole judge of the facts and the weight to be given to the evidence and determines the credibility of the witnesses, you understand that?
 {¶ 57} "MR. [C.]: Yes.
 {¶ 58} "MR. EVANS: Okay. So that's a lot of stuff to be responsible for, wouldn't you agree?
 {¶ 59} "MR. [C]: Yeah.
 {¶ 60} "* * *.
 {¶ 61} "MR. EVANS: Do you think you're okay with that?
 {¶ 62} "MR. [C.]: Yeah."
 {¶ 63} Based on the foregoing, we find that appellant's third assignment of error is not well-taken. *Page 14 
 {¶ 64} In appellant's fourth assignment of error he again argues that his trial counsel was ineffective. In this instance, appellant contends that counsel was ineffective by failing to challenge the above juror for cause or use a peremptory challenge to dismiss the juror.
 {¶ 65} Initially, we note that trial counsel's decisions as to which jurors to excuse and which ones to keep are considered to be a part of trial strategy. See State v. Goodwin, 84 Ohio St.3d 331, 341,1999-Ohio-356. The strategic choices of trial counsel are presumed to be sound. Strickland, 466 U.S. at 689. Further, during voir dire trial counsel was able to observe Mr. C.'s demeanor and assess his responses to questioning. Upon review, we find that trial counsel was not ineffective by failing to dismiss the juror. Appellant's fourth assignment of error is not well-taken.
 {¶ 66} In appellant's fifth and final assignment of error he contends that the cumulative effect of errors deprived appellant of a fair trial. We have stated that "although a particular error by itself may not constitute prejudicial error, the cumulative effect of the errors may deprive a defendant of a fair trial and may warrant the reversal of his conviction." State v. Hemsley, 6th Dist. No. WM-02-010, 2003-Ohio-5192, ¶ 32, citing State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. "`However, in order even to consider whether "cumulative" error is present, we would first have to find that multiple errors were committed in this case.'" Hemsley, at ¶ 32 quoting State v.Madrigal, 87 Ohio St.3d 378, 398, 2000-Ohio-448. *Page 15 
 {¶ 67} Upon review of appellant's preceding four assignments of error, we cannot say that there were multiple instances of harmless error; accordingly, there can be no cumulative error. Appellant's fifth assignment of error is not well-taken.
 {¶ 68} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., William J. Skow, J., CONCUR.
[1] "(A) General provision
"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Page 1